**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROY NAVARRE,** **Individually and on behalf of all others similarly situated,** **Plaintiff,** **v.** **TURNER INDUSTRIES GROUP, L.L.C.,** **Defendant.** | **Case No. ____________________** **JURY TRIAL DEMANDED** **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

Plaintiff—Roy Navarre ("Plaintiff" or "Navarre")—brings this action individually and on behalf of all current and former hourly employees (collectively, "Plaintiff and the Putative Collective Members"), who worked for Defendant—Turner Industries Group, L.L.C. ("Turner")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19.

## I.
## OVERVIEW

1. This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA.

2. Plaintiff and the Putative Collective Members are those similarly situated persons who worked for Turner, anywhere in the United States, at any time during the relevant statutes of limitations through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of overtime wages.

3. Although Plaintiff and the Putative Collective Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. During the relevant time period(s), Turner knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members for the proper amount of overtime on a routine and regular basis.

5. Specifically, Turner's regular practice—including during weeks when Plaintiff and the Putative Collective Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to deduct a 30-minute meal-period from Plaintiff and the Putative Collective Members' wages for a meal break they did not receive.

6. In addition, Turner employs an improper and non-neutral time rounding policy that fails to compensate the Plaintiff and Putative Collective Members for all the time they have actually worked—including overtime hours.

7. Finally, Turner requires Plaintiff and the Putative Collective Members to perform necessary and indispensable work—passing a security check point, preparing tools and equipment, and discussing work assignments—off-the-clock prior to starting their respective shifts each day (the "Start-Up Work").

8. The effect of Turner's practices was (and is) that all compensable time worked by Plaintiff and the Putative Collective Members was not (and is not) counted and paid; thus, Turner has failed to compensate Plaintiff and the Putative Collective Members the proper amount of overtime under the FLSA.

9. Turner knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members for the proper amount of overtime at the proper rate on a routine and regular basis during the relevant time period(s).

10. Plaintiff and the Putative Collective Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or relevant state law.

11. Plaintiff and the Putative Collective Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

12. Plaintiff also prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

13. Plaintiff Navarre was employed by Turner in Louisiana during the relevant time period(s). Plaintiff Navarre did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

14. The FLSA Collective Members are those current and former hourly employees who were employed by Turner, anywhere in the United States, at any time from July 14, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff worked and was paid.

15. Defendant Turner is a domestic limited liability company, that is headquartered in, and licensed to do business in the State of Louisiana, and may be served through its registered agent for

[1] The written consent of Roy Navarre is attached hereto as Exhibit "A."

service of process: **John H. Fenner, III, 8687 United Plaza Blvd, Baton Rouge, LA, United States, 70809**.

## III.
## JURISDICTION & VENUE

16. This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

17. Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

18. This Court has general personal jurisdiction over Turner because Louisiana qualifies as its home state.

19. Venue is proper pursuant to 28 U.S.C. § 1391 in the Eastern District of Louisiana because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

20. Additionally, Turner's corporate headquarters are in Louisiana, which is located within this District.

## IV.
## BACKGROUND FACTS

21. Defendant Turner is a provider of heavy industrial construction, maintenance, and specialty services across the United States.[2]

22. To provide its services, Turner employed (and continues to employ) thousands of hourly, non-exempt employees—including Plaintiff and the individuals that make up the putative collective and class.

[2] https://www.turner-industries.com/.

23. Plaintiff and the Putative Collective Members were employed by Turner as non-exempt employees who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

24. Plaintiff and the Putative Collective Members' job duties include constructing, erecting, installing, fabricating, dismantling, and repairing industrial structures or industrial machines for Turner and its customers throughout the United States.

25. While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work.

26. Importantly, none of the FLSA exemptions relieving a covered employer (such as Turner) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective Members.

27. Plaintiff Navarre was employed by Turner as an hourly employee in Louisiana from approximately March 2024 until May 2024.

28. Plaintiff and the Putative Collective Members typically worked four (4) days a week, and often ten (10) or more hours per day—these are referred to as "on-the-clock" hours.

29. In addition to their "on-the-clock" hours, Plaintiff and the Putative Collective Members regularly worked approximately three (3) to six (6) hours "off-the-clock" per week and have not been compensated for that time.

30. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Turner resulting in the complained of FLSA violations.

31. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties – that is they are (or were) responsible for constructing, erecting, installing, fabricating, dismantling, and repairing industrial structures or industrial machines.

32. Plaintiff and the Putative Collective Members are similarly (if not identically) situated with respect to their pay structure in that they are all paid on an hourly basis, are subject to an automatic meal break deduction, are subject to a time rounding policy, and are required to perform Start-Up Work.

33. Plaintiff and the Putative Collective Members are therefore similarly situated with respect to the policies (and practices) of Turner resulting in the complained of FLSA violations.

**Unpaid Meal Breaks**

34. Turner has a policy and practice of automatically deducting one 30-minute meal period from Plaintiff and the Putative Collective Members' daily time regardless of whether they perform compensable work during such "breaks" each shift.

35. Despite automatically deducting thirty (30) minutes from Plaintiff and the Putative Collective Members' time each shift, Plaintiff and the Putative Collective Members did not take a thirty (30) minute meal break.

36. Turner was (and continues to be) aware that Plaintiff and the Putative Collective Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA and relevant state law.

37. Turner benefitted from Plaintiff and the Putative Collective Members' free labor, as Plaintiff and the Putative Collective Members typically worked throughout their entire respective shifts without taking a break.

38. Turner also knew Plaintiff and the Putative Collective Members did not take their meal breaks because Plaintiff and the Putative Collective Members worked alongside their managers who knew Plaintiff and the Putative Collective Members worked throughout their respective shifts without stopping.

39. The thirty (30) minute meal period deduction resulted (and continues to result) in Plaintiff and the Putative Collective Members working overtime hours for which they were (and are) not compensated at the rates required by the FLSA.

**Improper Non-Neutral Rounding Policy**

40. Turner employs a time-keeping policy and practice that rounds Plaintiff and the Putative Collective Members' clock in and clock out times to a fifteen-minute increment that favors Turner.

41. For example, when a Putative Collective Member clocks in at 6:01 a.m., Turner rounds their time up to 6:15 a.m., resulting in that Putative Collective Member not being paid for the fourteen (14) minutes of work performed from 6:01 a.m. to 6:15 a.m.

42. To be valid, rounding policies must ensure that, over a period of time, an employee is fully compensated "for all the time they have actually worked." 29 C.F.R. 785.48. The policy must be neutral both on its face and in its application.

43. Turner's rounding policy is not neutral on its face or in its application because Plaintiff and Putative Collective Members' clock in and clock out times are ***always*** rounded in Turner's favor.

44. Plaintiff and the Putative Collective Members regularly lost one (1) to fourteen (14) minutes of compensable time each time they clocked in or out as a result of Turner's rounding policy.

45. Turner's rounding policy resulted in the failure to compensate Plaintiff and the Putative Collective Members for all compensable overtime hours.

**Unpaid Start-Up Work**

46. Plaintiff and the Putative Collective Members were not (and continue to not be) compensated for all the hours they worked for Turner as a result of Turner's corporate policy and practice of requiring all hourly employees to be ready to work the moment their respective shift starts.

47. Specifically, Plaintiff and the Putative Collective Members were (and continue to be) required to perform integral and indispensable tasks before clocking in.

48. The Start-Up Work is necessary to prepare for their respective shifts and allow them to begin construction work as soon as their respective shift begins.

49. Plaintiff and the Putative Collective Members' Start-Up Work includes but is not limited to: passing a security checkpoint, preparing tools and equipment, and discussing their work assignments with their respective managers and coworkers.

50. The Start-Up Work can take anywhere from ten (10) minutes up to thirty (30) minutes each shift.

51. In weeks in which Plaintiff and the Putative Collective Members worked forty (40) or more hours, the unpaid Start-Up Work qualified as unpaid overtime.

52. Turner required (and continues to require) Plaintiff and the Putative Collective Members be ready to work as soon as their respective shift starts.

53. If Plaintiff and the Putative Collective Members had not completed their Start-Up Work prior to shift start, they would not be prepared to begin work at their assigned workstations and could be disciplined for being tardy or unprepared for the day.

54. Even though Turner knew these tasks had to be completed before Plaintiff and the Putative Collective Members could start their respective shift, Turner does not consider this time compensable and does not allow them to record it.

55. The Start-Up Work is integral and indispensable to the Plaintiff and the Putative Collective Members' primary job duties because:

a. The security checkpoint ensures the workplace is a secure and safe environment and maintaining a safe workplace is a primary duty for Plaintiff and the Putative Collective Members;

b. The preparation of tools and equipment is essential to perform their construction work; and

c. The meetings with managers and coworkers allow Plaintiff and the Putative Collective Members to know what their respective assignment is for the day.

56. Although this Start-Up Work is necessary and integral to their job duties, Plaintiff and the Putative Collective Members have not been compensated for this time because Turner does not consider it to be compensable and does not permit Plaintiff and the Putative Collective Members to record the hours spent performing this work.

57. As such, Turner required (and continues to require) Plaintiff and the Putative Collective Members to perform the Start-Up Work "off-the-clock" and without pay.

58. As a result of Turner's rounding policy and its failure to compensate Plaintiff and the Putative Collective Members for compensable work performed "off the clock," such as during their unpaid meal breaks or Start-Up Work, Plaintiff and the Putative Collective Members worked overtime hours for which they were not compensated at the rates required by the FLSA and relevant state law.

59. Turner's failure to compensate Plaintiff and the Putative Collective Members overtime compensation at a rate of one and one-half times their regular rates of pay violated (and continues to violate) the FLSA and relevant state law.

60. Turner knew or should have known that it was not (and is not) compensating Plaintiff and the Putative Collective Members for the proper amount of overtime compensation at the proper rate in violation of the FLSA and relevant state law.

61. Turner knew or should have known that not compensating Plaintiff and the Putative Collective Members for all overtime hours worked at the correct rate did cause, and continues to cause, financial injury to Plaintiff and the Putative Collective Members.

62. Because Turner did not pay Plaintiff and the Putative Collective Members time and a half for all hours worked in excess of forty (40) in a workweek, Turner's pay policies and practices willfully violated (and continue to violate) the FLSA and relevant state law.

63. Plaintiff and the Putative Collective Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

### A. FLSA COVERAGE

64. The preceding paragraphs are incorporated as though fully set forth herein.

65. The FLSA Collective is defined as follows:

> **ALL HOURLY EMPLOYEES WHO WERE EMPLOYED BY TURNER INDUSTRIES GROUP SERVICES, L.L.C., ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM JULY 14, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").**

66. At all material times, Turner has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

67. At all material times, Turner has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

68. At all material times, Turner has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of telecommunications infrastructure and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

69. Specifically, Turner employs thousands of hourly employees to provide services in the industrial construction and maintenance industry across the United States, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

70. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Turner, these individuals provided services for Turner that involved interstate commerce for purposes of the FLSA.

71. In performing work for Turner, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

72. Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Turner and its customers and employees throughout the United States. 29 U.S.C. § 203(j).

73. At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

74. The proposed classes of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 65.

75. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Turner.

## B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

76. Turner violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

77. Moreover, Turner knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

78. Turner knew or should have known that its pay practices were (and continue to be) in violation of the FLSA.

79. Turner is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were (and continue to be) in violation of the FLSA.

80. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Turner to pay them according to the law.

81. The decision and practice by Turner to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

82. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA

in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, and attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

83. All previous paragraphs are incorporated as though fully set forth herein.

84. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of Turner's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

85. Other similarly situated employees of Turner have been victimized by Turner's patterns, practices, and policies, which are in willful violation of the FLSA.

86. The FLSA Collective is defined in Paragraph 65.

87. Turner's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA results from generally applicable policies and practices of Turner, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

88. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

89. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

90. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

91. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

92. Absent a collective action, many members of the proposed FLSA Collective will not likely obtain redress of their injuries and Turner will retain the proceeds of their rampant and ongoing violations.

93. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

94. Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as defined in Paragraph 65.

## VI.
## RELIEF SOUGHT

95. Plaintiff Navarre respectfully prays for judgment against Turner as follows:

a. For an Order certifying the FLSA Collective as defined in ¶ 65;

b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to § 16(b) of the FLSA finding Turner liable for unpaid wages, including unpaid overtime wages, due to Plaintiff Navarre (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff Navarre (and those FLSA Collective Members who have joined in the suit);

d. For an Order awarding the costs of this action;

e. For an Order awarding attorneys' fees;

f. For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

g. For an Order awarding Plaintiff Navarre a service award as permitted by law;

h. For an Order compelling the accounting of the books and records of Turner, at Turner's expense (should discovery prove inadequate); and

i. For an Order granting such other and further relief as may be necessary and appropriate.

Date: July 14, 2025

Respectfully submitted,

**BOHRER BRADY, LLC**

By: */s/ Scott E. Brady*
**Philip Bohrer (#14089)**
phil@bohrerbrady.com
**Scott E. Brady (#24976)**
scott@bohrerbrady.com
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24045189
austin@a2xlaw.com
**Carter T. Hastings** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24101879
carter@a2xlaw.com
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Counsel for Plaintiff and the Putative Collective Members***